1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-CR-0035 JLT SKO |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 AND DENYING REQUEST FOR HEARING |
| v. | |
| WILLIAM ROE ACEVEDO, | |
| Defendant. | (Docs. 251 and 254) |

On November 2, 2020, William Acevedo filed an initial motion to vacate, set aside, or correct his 156-month sentence under 28 U.S.C. § 2255. (Doc. 251.) Acevedo subsequently requested leave to amend his initial petition, which the Court granted. (Doc. 252; Doc. 253.) On March 1, 2021, Acevedo filed an amended § 2255 motion. (Doc. 254.) Despite having pled guilty, Acevedo collaterally attacks his conviction and sentence by asserting four ineffective assistance of counsel claims. For the reasons set forth below, the Court **DENIES** his motion.

## I.   FACTUAL BACKGROUND

On October 6, 2017, Acevedo, an inmate at United State Penitentiary, Atwater, assaulted a correctional officer while the officer was performing his official duties. (Doc. 67 at 4.) As alleged in the indictment and shown through surveillance video footage of the incidents, the attack on the Atwater correctional officer involved a total of six inmates who had met previously to plan the attack. (Doc. 1 at 1-2; Doc. 102 at 5-6.) According to the Government, two of Acevedo's co-

1

1   defendants repeatedly stabbed the officer with a 6.5-inch sharpened weapon, while Acevedo

2   blocked the officer's exit route. (Doc. 267 at 2.) Acevedo tackled and repeatedly punched the

3   officer when he tried to escape. (*Id.*) On February 15, 2018, the Government obtained an

4   indictment against Acevedo for assault under 18 U.S.C. § 111(a)(1), (b). (Doc. 1 at 1.)

5       The Court appointed Robert Lamanuzzi to represent Acevedo. (Doc. 32.) On July 20,

6   2018, Mr. Lamanuzzi received a proposed plea agreement from the Government and thereafter

7   met with Acevedo to review the agreement. (Doc. 269 at 2.) On August 9, 2018, the Government

8   sent an email to Mr. Lamanuzzi informing him that the currently proposed plea agreement would

9   expire on August 23, 2018, and the Government would seek a superseding indictment containing

10  a count of conspiracy to commit murder. (*Id.*) Mr. Lamanuzzi relayed the information to

11  Acevedo. (*Id.*) Mr. Lamanuzzi discussed the ramifications of entering a plea agreement, including

12  the waiver of rights and the details surrounding the sentencing guidelines. (*Id.* at 2-3.)

13      Acevedo signed the plea agreement and entered his change of plea on August 20, 2018,

14  pleading guilty to one count of assault under 18 U.S.C. § 111(a)(1), (b). (Doc. 67; Doc. 262 at 7.)

15  In the plea agreement, Acevedo recognized that he had fully discussed its terms with his attorney

16  and understood them. (Doc. 67 at 1.) By signing the agreement, Acevedo acknowledged that he

17  entered it voluntarily, free from threats or force from others. (*Id.* at 2.) He also recognized that the

18  Court was not a party to the agreement, the recommendations regarding sentencing did not

19  guarantee a particular sentence, and he could not withdraw his plea if the Court did not follow the

20  sentencing recommendations. (*Id.* at 2-5.) The plea agreement contains a waiver of Acevedo's

21  rights to appeal or collaterally attack his plea. (*Id.* at 6.) During the change of plea hearing, the

22  Court reaffirmed with Acevedo that he understood and agreed to each of these provisions. (Doc.

23  262 at 2-7.) The Court also reviewed with Acevedo the facts giving rise to the assault charge and

24  confirmed Acevedo's guilty plea to that charge. (*Id.* at 7.)

25      On November 13, 2018, the Court conducted a sentencing hearing. Pursuant to the

26  presentence investigation, the probation office found the applicable offense level to be 30, with a

27  guideline range of 121-151 months of imprisonment. (Doc. 102 at 4.) The Government submitted

28  a sentencing memorandum which calculated the appropriate offense level to be 28 and the

guideline range as 97-121. (Doc. 119 at 2.) In accordance with their obligation under the plea agreement, the Government recommended a sentence at the low end of the guideline range. (*Id.*) Mr. Lamanuzzi filed objections to the presentence report and argued for an offense level of 22. (Doc. 108; Doc. 239 at 3.) Mr. Lamanuzzi objected to the probation office's 2-level increase based on the contention that the assault occurred with more than minimal planning and the 4-level increase for use of a dangerous weapon. (Doc. 108 at 5-7.) The Court overruled the objections, finding sufficient evidence that Acevedo engaged in more than minimal planning and knew his co-defendants used a dangerous weapon. (Doc. 239 at 3-6.)

Acevedo spoke on his own behalf during the sentencing hearing. He stated that he "took responsibility for what [he] did" and that he hoped anyone affected by his actions would "heal, you know, and forget, if anything, about what I have done, and just move on with their life." (Doc. 239 at 6.) The Court pressed Acevedo on the seriousness and violent nature of his actions and sentenced him to a term of 156 months of imprisonment. (*Id.* at 7-8.) The Court entered judgment on November 13, 2018 (Doc. 121) and issued an amended judgment on November 30, 2018, to correct a clerical error (Doc. 122).

Following his sentence, Acevedo was incarcerated at the Federal Correctional Institution in Mendota, California in the Special Housing Unit. (Doc. 254 at 5.) On July 3, 2019, he was transferred to a penitentiary in Victorville, California and held in "holdover status" awaiting transfer to the U.S. Penitentiary Administrative Maximum in Florence, Colorado. (*Id.* at 5-6.) Acevedo arrived in the Florence penitentiary on July 12, 2019, but never received his property confiscated from him in the Mendota facility. (*Id.*) He filed an initial § 2255 motion on November 2, 2020 (Doc. 251), and an amended petition on March 1, 2021 (Doc. 254).

## II.    LEGAL STANDARD

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). A § 2255 motion entitles a federal prisoner to relief "[i]f the court finds that . . . there has been . . . a denial or infringement of the constitutional rights of the prisoner . . ." 28 U.S.C.

§ 2255(b). Generally, only a narrow range of claims fall within the scope of § 2255. *United States v. Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). The alleged error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The pleadings of a *pro se* litigant are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, the requirement of liberal construction does not mean the court can ignore an obvious failure to allege facts that set forth a cognizable claim. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) ("We also concur in the dismissal of the allegations concerning the photographic array shown to some witnesses as vague, conclusory and without any facts alleged in support of the claim.").

### III.   ANALYSIS

Acevedo's § 2255 petition contains four grounds of ineffective assistance of counsel claims, which he asserts negated the voluntariness, knowingness, and intelligence of his guilty plea. (Doc. 254.) Acevedo also argues, under "Issue 2" that his petition is timely, despite having filed it almost a year after the statute of limitation period had expired, because his circumstances warrant equitable tolling. The Government opposes all claims and maintains the motion is untimely. (Doc. 267.)

**A.   Timeliness of § 2255 Motion ("Issue 2")**

A one-year state of limitations applies to a § 2255 motion. 28 U.S.C. § 2255(f). The

1   limitations period begins to run on the latest of the following occurrences: (1) when the judgment

2   of conviction becomes final; (2) when the impediment caused by governmental action in violation

3   of the Constitution that prevents a § 2255 motion is removed, if the motion concerns such

4   constitutional violation; (3) when the Supreme Court first recognizes the asserted right (or makes

5   such right retroactively applicable); (4) when facts giving rise to a § 2255 claim could have been

6   discovered through the exercise of due diligence. (*Id.*) If a petitioner fails to file within this one-

7   year limitation, typically the petition will be time-barred.

8          However, certain instances give rise to equitable tolling, thereby waiving the motion's

9   untimeliness. *See United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004.) "To be entitled to

10   equitable tolling, a habeas petitioner must demonstrate two things: '(1) that he has been pursuing

11   his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

12   timely filing.'" *Williams v. Filson*, 908 F.3d 546, 558 (9th Cir. 2018) (quoting *Holland v. Florida*,

13   560 U.S. 631, 649 (2010); *see also United States v. Gilbert*, 807 F.3d 1197, 1202 (9th Cir. 2015)

14   (applying the same standard to § 2255 petitions). Equitable tolling is a "very high bar[] and

15   reserved for rare cases." *Yow Ming Yeg v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014). However,

16   it may be appropriate "[w]hen external forces, rather than a petitioner's lack of diligence, account

17   for the failure to file a timely claim." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see*

18   *also Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003). The petitioner must show that the

19   extraordinary circumstances caused his untimeliness. *Ramirez v. Yates*, 571 F.3d 993, 997 (9th

20   Cir. 2009). The causation element does not require actual impossibility. *Grant v. Swarthout*, 862

21   F.3d 914, 918 (9th Cir. 2017). Rather, even when "it would have technically been possible for a

22   prison to filed a petition, but a prisoner would have likely been unable to do so," the causation

23   element is met. *Id.* The burden remains with the petitioner to show he is entitled to equitable

24   tolling. *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

25          The one-year statute of limitations required Acevedo to file his § 2255 petition by

26   November 30, 2019.[1] Acevedo delivered his initial petition to prison officials for mailing on

27   —————————————

28   [1] The Court entered the final judgment on November 14, 2018 (Doc. 121) but issued an amended judgment on
November 30, 2018 (Doc. 122). Whether the Court construes the one-year deadline from the initial final judgment or

October 29, 2020, approximately eleven months after the deadline had passed. Acevedo contends that equitable tolling applies and excuses his almost one-year delay. (Doc. 254 at 4-7.) Acevedo asserts that he could not file his § 2255 motion within the statute of limitations because the prison withheld his property including his "legal material" and "his 2255." (*Id.*) Acevedo alleges that on July 3, 3019, he was taken from his cell in the special housing unit at the Federal Correctional Institution in Mendota, California, to be transferred to a new facility. (*Id.* at 5.) At that time, prison staff allegedly confiscated "all of his property, including his legal material which contained his 28 U.S.C. 2255 paperwork that he has [sic] yet to complete" to mail it to Acevedo's new facility. (*Id.*) Acevedo was transferred through two intermediary facilities before arriving at the United States Penitentiary Administrative Maximum in Florence, Colorado. (*Id.* at 5-6.) After arriving at the Florence penitentiary, Acevedo allegedly made many requests and administrative appeals to recover his property.[2] (Doc. 254 at 6.) Despite his requests, the prison never returned Acevedo's legal materials to him. (*Id.*) Acevedo argues that he acted diligently to pursue his § 2255 claims by exhausting the board of prison administrative remedies and utilizing the prison law library to conduct research. (*Id.*) He asks the Court to equitably toll the time from his initial transfer, on July 3, 2019, to October 29, 2020, when he mailed his petition. (*Id.*)

It is "'unrealistic to expect [a habeas petition] to prepare and filed a meaningful petition on his own within the limitations period' without access to his legal file." *Espinoza-Matthews*, 432 F.3d at 1027-28 (alterations in original) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003). A complete denial of access to legal resources or personal legal documents may rise to the level of a constitutional violation if the "alleged shortcomings in the library or legal assistance program hindered [the defendant's] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The Government argues that equitable tolling is not appropriate in this case because Acevedo did not identify any particular document needed to file his petition. (Doc. 267 at 11-12.)

---

the amended final judgment, Acevedo's § 2255, mailed on October 29, 2020, far exceeds either date.

[2] Acevedo attached several exhibits with his amended petition which demonstrate his many attempts to recover his property. (Doc. 254 at 13-22.) A response from the Federal Bureau of Prisons, on March 18, 2020, corroborates his allegations as it states: "USP Atwater have attempted several times to locate the property in question. It is suggested you file a Tort Claim in attempt to be compensated for lost property." (*Id.* at 19.)

Acevedo's amended petition, however, specifically alleges his confiscated property included an uncomplete § 2255 petition, which presumably contained legal and factual research to support his claims. (Doc. 254 at 5 ("all of his property, including his legal material which contained his 28 U.S.C. 2255 paperwork that he has yet to complete").) Lack of access to prisoner's property which includes drafts of the petitioner's § 2255 petition or related petitions may justify equitable tolling. *See Ramirez*, 571 F.3d at 996, 998 (holding that denying access to petitioner's legal materials may warrant equitable tolling where petitioner had filed prior state habeas corpus and coram nobis petitions to collaterally attack his conviction); *see also Espinoza-Matthews*, 432 F.3d at 1027-28 (tolling limitations even though petitioner "had not specified which legal papers were missing [and] how the absence of those paper prevented him from filing his petition" but had previously filed a state habeas corpus petition).

The Government further argues that Acevedo's confiscated property could not have contained material pertinent to his § 2255 petition. (Doc. 267 at 12.) It contends the prison originally confiscated Acevedo's property on October 6, 2017, the same day as the attack on the correctional officer that gave rise to Acevedo's currently challenged conviction. (*Id.*) The Government argues, therefore, any legal material that Acevedo had in his possession when confiscated on October 6, 2017, could not pertain to subsequent § 2255 claims, which arise from alleged ineffective assistance of counsel the following year. (*Id.*) With its response, the Government provided a history of administrative claims and requests filed by Acevedo, in which he indicates the property he sought to recover was seized on October 6, 2017. (Doc. 267-1 at 7-24 (e.g., "On October 6, 2015, my personal property was taken into custody by U.S.P. Atwater.").)

Acevedo, on the other hand, asserts that his property was again confiscated on July 3, 2019, before his facility transfer. (Doc. 254 at 5.) Though legal documents Acevedo may have had prior to October 6, 2017, would be irrelevant to his current § 2255 claims, Acevedo alleges on July 3, 2019, he had an in-progress § 2255 petition. (*Id.*) The evidence submitted by the Government seemingly undermines the credibility of Acevedo's allegations. However, if true, Acevedo had to restart his petition after arriving at the U.S. penitentiary in Colorado, which would create extraordinary circumstances that would make it unlikely for Acevedo to file a timely

§ 2255 petition.[3] *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1147 (9th Cir. 2000) (holding district court erred in denying petition as time-barred without further factual development where the prison law library lacked legal materials relevant to the petition). Although a disputed material fact exists regarding whether extraordinary circumstances existed and therefore whether equitable tolling applies, the Court need not hold a hearing to resolve the issue because, as discussed below, the merits of Acevedo's claims do not require a hearing and do not present a valid claim for relief.

**B.      Ineffective Assistance of Counsel**

Turning to the merits of the claims, Acevedo raises four claims of ineffective assistance of counsel that allegedly undermined the knowingness and voluntariness of his plea agreement. Acevedo entered into a plea of guilty containing a waiver of his right to collaterally attack his conviction and sentence. (Doc. 67 at 6.) However, "[c]laims that the plea or waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary [] may not be waived." *Davies v. Benov*, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017).

A defendant may collaterally attack the validity of his plea, conviction, or sentence if defendant's counsel deprived defendant of the Sixth Amendment right to "effective assistance, simply by failing to render 'adequate legal assistance.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). To mount an ineffective assistance of counsel challenge, the petitioner must establish two elements: deficient performance and prejudice. *See Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 687). Deficient performance means counsel's representation "fell below an objective standard of reasonableness considering all the circumstances." *Stanley*, 633 F.3d at 862 (citing *Strickland*, 466 U.S. at 688). To show deficient performance of counsel, the petitioner must demonstrate that his attorney "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373,

---

[3] The Government argues that because Acevedo was able to file his § 2255 motion in 2020 without ever having received his prior work this evidences the lack of necessity in having these records. However, it is precisely because Acevedo never received his legal file that warrants equitable tolling for the approximately sixteen months in between his facility transfer and filing the petition, in which time Acevedo pursued both administrative remedies and restarted his research on the § 2255 petition. (Doc. 254 at 6.)

375-76 (9th Cir. 1985). A fair assessment of attorney performance requires courts to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Courts accord a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

When the defendant challenges a sentence or conviction that resulted from a plea agreement, the movant must demonstrate the advice from counsel was "so incorrect and so insufficient that it undermined [movant's] ability to make an intelligent decision about whether to accept the [plea] offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (internal quotations omitted). The question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

As to the second element, prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* To overcome a negotiated plea agreement, the movant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

1. "Issue 1" – Coercion to Sign Plea Agreement

Acevedo argues that his counsel was ineffective by "coercing petitioner to plead guilty to 18 U.S.C. 111(a)(1) and (b)," making his waiver of appeal and challenge for collateral review unknowing, involuntary and unintelligently made. (Doc. 254 at 3.) According to Acevedo, he did not have any knowledge of or participate in the planning to assault the correctional officer on October 6, 2017, and only pled guilty because the Government, through his defense counsel, coerced him by threatening a superseding indictment which would include a count of conspiracy

to murder a federal officer, if Acevedo did not accept the current plea proposal. (*Id.*) The Government does not dispute that it intended to enter a superseding indictment with the conspiracy to commit murder charge if Acevedo did not accept the proposed plea agreement prior to its expiration on August 23, 2018. (Doc. 267 at 4.) Mr. Lamanuzzi confirmed that he relayed the agreement's expiration, the Government's intentions, and the potential consequences of the more serious offense to Acevedo. (Doc. 269 at 2.)

During plea negotiations, "prosecutors may threaten additional charges and may carry through on this threat." *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996). "[A]cceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process." *Bordenkircher v. Hayes*, 434 U.S. 357, 363-65 (1978) (holding no due process violation occurred where prosecutor threatened to bring additional criminal charges for which probable cause existed). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Id.* (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Prosecutors have discretion to determine which charges to bring, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute." *Bordenkircher*, 434 U.S. at 364. A guilty plea is not compelled or invalid when "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty" rather than face the risk of a higher penalty for the crimes charged. *Brady v. United States*, 397 U.S. 742, 751 (1970); *see also Quezada v. United States*, 2014 WL 3589883, at *4 (S.D. Cal. July 18, 2014) (finding no coercion sufficient to invalidate the plea agreement even though the petitioner signed the agreement because he faced the risk of more serious punishment and additional charges given that "[p]rosecutors are permitted to impose such difficult choices").

The Government's conduct—setting an expiration for the plea offer and indicating their intention to seek a more serious charge if Acevedo did not accept the plea—does not amount to undue coercion. The prosecutors had the discretion to bring the conspiracy to commit murder

charge given that Acevedo's co-defendants used 6.5-inch weapons to repeatedly stab the victim. (Doc. 102 at 5-6.) Surveillance video footage shows that Acevedo stopped the victim from the fleeing the attack and physically struck him. (*Id.*) Moreover, video footage captured Acevedo and his co-defendants meeting the day prior to the attack. (*Id.*) The Government's evidence, even if not conclusive proof of Acevedo's involvement in the conspiracy, would have sufficed as probable cause to bring the murder conspiracy charge had he not accepted the plea offer. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."). Putting pressure on Acevedo to accept the plea by threatening the murder charge fell within prosecutorial discretion and within the constitutional bounds of plea bargaining.

Moreover, Mr. Lamanuzzi's actions, of communicating the potential, more serious superseding indictment to Acevedo, do not constitute deficient performance. To the contrary, Mr. Lamanuzzi had an ethical duty as a defense attorney to report significant updates in Acevedo's case to him, including whether he faced additional charges with potentially more serious consequences. *Strickland*, 466 U.S. at 688 (holding defense counsel has a duty to "keep the defendant informed of important developments in the course of the prosecution"). Thus, Mr. Lamanuzzi's communications with Acevedo abided by his ethical responsibilities and allowed Acevedo to make a more informed decision. His actions, therefore, do not fall outside the range of competence of defense attorneys such that it may have undermined the voluntary and intelligent character of Acevedo's guilty plea. *See Hill*, 474 U.S. at 56 ("[T]he voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (internal quotations omitted)).

In addition, Acevedo's current allegations contradict his prior sworn testimony. During his change of plea, the Court asked if "anybody [was] forcing you or threatening you in any way to get you" to accept the plea offer. (Doc. 262 at 6.) Acevedo said "no." (*Id.*) He also testified that no one was "promising [him] something other than what's in the plea agreement." (*Id.*) The plea agreement itself contains a declaration that his guilty plea was "voluntary and that no force,

threats, promises or representations have been made to anybody, no agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty." (Doc. 67 at 2.) Based on Acevedo's testimony concurrent with his decision to plead guilty, the Court found that his plea was voluntary, knowing, intelligent, and not coerced. (Doc. 262 at 6-7.) Such "findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings." *Doe v. Woodford*, 508 F.3d 563, 571 (9th Cir. 2007) (internal quotations omitted). Acevedo's current conclusory allegations that he did not enter the plea voluntarily, knowingly, and intelligently based on conduct that does not amount to ineffective assistance of counsel do not overcome that barrier.[4]

2.   "Issue 3" – Misinformation Regarding Potential Sentence

Acevedo also alleges that his counsel misinformed him, prior to signing the plea agreement, that he would receive a 57-month sentence because the United States would recommend the low end of the guidelines. (Doc. 254 at 7-8.) He contends that Mr. Lamanuzzi failed to clarify that the judge would consider "a host of other factors which increased the number of months substantially." (*Id.*) To the contrary, Mr. Lamanuzzi attests that he estimated that guideline range as 78-97 months, if the Court found offense level increases for more than minimal planning and use of a dangerous weapon. (Doc. 269 at 2-3.) Mr. Lamanuzzi states that he advised Acevedo that he would object to those level increases, and he could receive a guideline range of 57-71 months. (*Id.*) Mr. Lamanuzzi recognizes that he initially failed to account for a 2-level increase pursuant to USSG § 2A2.2(b)(7) as later determined in the presentence report. (*Id.*) However, during his discussions with Acevedo prior to signing the plea agreement, Mr. Lamanuzzi explained the Court was not bound to the plea agreement and could sentence Acevedo up to the maximum amount of 20 years. (*Id.*)

Acevedo's allegations do not suffice to maintain an ineffective assistance of counsel

---

[4] In his reply, Acevedo seems to raise, for the first time, two additional arguments regarding alleged ineffective assistance of counsel. He contends that Mr. Lamanuzzi only met with him for thirty minutes to advise him regarding the possible superseding indictment and that he waited three weeks from receiving the proposed plea agreement to meeting with Acevedo to discuss it. (Doc. 273 at 1-3.) The Court need not consider arguments or claims raised for the first time in a reply brief; however, the Court notes that Acevedo's conclusory allegations directly contradict his own prior testimony that he had sufficient time to review the plea agreement with his attorney. (Doc. 262 at 2-3.)

claim. First, his statements made during his plea colloquy and the terms of his plea agreement unambiguously repudiate his contentions. During his change of plea hearing, Acevedo testified that he understood the Court was not part of the plea agreement and did not have to follow it when imposing a sentence. (Doc. 262 at 6.) He further testified that he understood the maximum possible sentence, if he pled guilty, was 20 years of imprisonment. (*Id.* at 5.) Acevedo confirmed that he reviewed the entire plea agreement with Mr. Lamanuzzi and that he understood all its terms. (*Id.* at 2-3.) The plea agreement states:

> Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.

(Doc. 67 at 5.) Acevedo's current allegations, that he was guaranteed a 57-month sentence and was unaware the Court could consider other factors in determining his sentence, have no support in the record. *See Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion where allegations regarding ineffective assistance of counsel were entirely conclusory and without support in the record); *see also United States v. Rangel*, 2019 WL 2137450, at *3 (E.D. Cal. May 16, 2019) (dismissing defendant's argument that he only entered the plea agreement because he believed it would lower his sentence to 135 months because he testified at the change of plea hearing that he understood "the precise contours of his sentence would be determined at a later date").

Second, even if Mr. Lamanuzzi incorrectly informed Acevedo regarding the sentencing guidelines because he failed to account for the 2-level increase under USSG § 2A2.2(b)(7), this mistake did not prejudice Acevedo. Because Acevedo knew that he could receive a sentence of up to 20 years at the Court's discretion, he could not have relied on Mr. Lamanuzzi's incorrect low-end estimate as a guarantee when entering the plea agreement. *Gonzalez v. United States*, 33 F.3d 1047, 1051-52 (9th Cir. 1994) (no prejudice from attorney's gross miscalculation of sentencing guidelines and likely sentence where defendant advised of maximum sentence); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) (affirming no prejudice by counsel's error in

1   predicting the sentencing outcome because when taking defendant's plea, the court explained it

2   had discretion to decide his sentence). Moreover, Acevedo does not allege that he would not have

3   entered the plea agreement if not for the purported misinformation about the low-end guideline.

4   (Doc. 254 at 7-8.) Thus, Acevedo does not assert prejudicial impact by Mr. Lamanuzzi's conduct.

5   Because Acevedo's conclusory allegations cannot overcome the clear contradictory record

6   evidence and because any alleged deficient performance by Mr. Lamanuzzi could not have

7   caused prejudice, Acevedo's claim in issue three fails.

8           3.   "Issue 4" – Misinformation Regarding Responsibility for "Relevant Conduct"

9           Acevedo also makes vague allegations that his counsel "was ineffective in failure to

10  explain that movant would be held responsible for relevant conduct under USSG § 1B1.3" and for

11  the "enhanced penalty of 18 U.S.C. 111(a)(1) and held responsible for relevant conduct." (Doc.

12  254 at 8.) As an initial matter, these ambiguous allegations do not provide sufficient detail to

13  warrant relief. *James*, 24 F.3d at 26 ("Conclusory allegations which are not supported by a

14  statement of specific facts do not warrant habeas relief."). To the extent Acevedo means that

15  "relevant conduct under USSG § 1B1.3" are the level increases for minimal planning and use of a

16  dangerous weapon, Acevedo's allegations have no basis in the record. In their discussions prior to

17  signing the agreement, Mr. Lamanuzzi attests that he explained these enhancements may apply,

18  that he planned object to them, and that if those objections were successful, it would reduce the

19  low-end guideline to fifty-seven months, which Acevedo claims, in a separate ground of his

20  motion, to have been his expected sentence. (Doc. 269 at 2-3.) Mr. Lamanuzzi filed objections to

21  the minimal planning and dangerous weapon enhancements in response to the presentence report.

22  (Doc. 108 at 5-6.) The Court considered but overruled the objections during the sentencing

23  hearing. (Doc. 239 at 3-6.) The record shows Acevedo was aware of the possible level increases.

24          Moreover, even if Mr. Lamanuzzi failed to advise Acevedo of the impact of these level

25  increases, that failure did not prejudice Acevedo. First, Acevedo did not allege that he would not

26  have pled guilty if not for this lack of information. (Doc. 254 at 8.) Second, as previously

27  explained with respect to ground three, Acevedo testified that he knew the Court could impose a

28  sentence of up to 20 years imprisonment and could consider a range of factors in making the

14

1   decision. (Doc. 262 at 5-6.)  During his plea colloquy, Acevedo also testified that he understood

2   the elements of the crime charged and agreed to the facts of the offense. (*Id.* at 7.) Accordingly,

3   Acevedo cannot maintain a claim for ineffective assistance of counsel under issue four.

4           4.   "Issue 5" – Exculpatory DNA Evidence

5           Acevedo asserts that Mr. Lamanuzzi was ineffective by failing to disclose "exculpatory

6   DNA evidence" that "would have proved beyond a reasonable doubt that petitioner is in fact not

7   guilty of the enhanced penalty 18 U.S.C. 111(a)(1) and (b)." (Doc. 254 at 8-9.) The Government

8   and Mr. Lamanuzzi maintain that no such DNA evidence exists. (Doc. 267 at 15; Doc. 269 at 3.)

9   More importantly, DNA evidence would have no relevance to Acevedo's conviction under 18

10  U.S.C. § 111(a), (b) because Acevedo was never accused of using a weapon himself. (Doc. 269 at

11  3; Doc. 1 at 1-2.) Rather, the enhanced penalty for use of a dangerous weapon arose from his co-

12  defendants' stabbing the victim with 6.5-inch weapons. (Doc. 239 at 4-6.) In finding sufficient

13  factual basis for this enhanced penalty, the Court did not rely on any DNA evidence connecting

14  the weapons to the co-defendants, but instead considered the surveillance footage that clearly

15  depicted their attack with the dangerous weapons. (*Id.*) Even if DNA evidence had existed, any

16  failure to disclose the evidence to Acevedo could not have impacted the knowingness and

17  voluntariness of his plea or the Court's sentence. No reasonable defendant would have changed

18  his mind regarding a decision to plead guilty upon evidence that had no relevance to his case.

19  *Hacheney v. Obenland*, 2016 WL 5795285, at *11 (W.D. Wash. Aug. 31, 2016) (finding no

20  ineffective assistance of counsel based upon a claim that counsel failed to investigate evidence

21  that was "not exculpatory and [did] not relate to his case"). Accordingly, no prejudice exists

22  regarding a failure to disclose evidence, and Acevedo's claim has no merit.

23  **C.      No Evidentiary Hearing Is Warranted**

24          A § 2255 motion requires an evidentiary hearing where "the movant has made specific

25  factual allegations that, if true, state a claim on which relief could be granted." *United States v.*

26  *Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). Under this standard, an evidentiary hearing in

27  § 2255 cases is required "[u]nless the motion and the files and records of the case conclusively

28  show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *United States v. Withers*,

638 F.3d 1055, 1062-63 (9th Cir. 2011) ("[A] district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'") (quoting *Schaflander*, 743 F.2d at 717); *see also Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("[A] hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims"). While conflicting sworn statements from a defendant and his trial attorney ordinarily trigger an evidentiary hearing where the defendant's version of the facts would entitle him to relief, the Ninth Circuit has held that "merely conclusionary statements in a [section] 2255 motion are not enough to require a hearing." *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980) (internal quotations omitted).

Acevedo's § 2255 motion does not require an evidentiary hearing. As detailed above, Acevedo made conclusory allegations about purported ineffective assistance of counsel, and his factual allegations directly contradict his prior sworn testimony. *See United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required."). The files and the records of Acevedo's guilty plea and sentencing conclusively show that he did not suffer prejudice from any alleged deficient conduct of defense counsel. Thus, the motion makes no claim that entitles Acevedo to relief and a hearing is not warranted.

### IV.     ORDER

For the reasons state above, the Court **ORDERS**:

1.     Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docs. 251 and 254) is **DENIED** in its entirety.

2.     Defendant's request for an evidentiary hearing is **DENIED**.

IT IS SO ORDERED.

Dated:   **December 15, 2022**

UNITED STATES DISTRICT JUDGE